IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | : | |
|---|---|---|
| **Devonna L. Johnson,** | : | |
| | : | Case No. 2:24-cv-03906 |
| Plaintiff, | : | |
| v. | : | Judge Graham |
| | : | |
| **Castro Law, LLC,** | : | Magistrate Judge Vascura |
| | : | |
| Defendant. | : | |

## OPINION & ORDER

This matter is before the Court upon Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 23. For the reasons that follow, Defendant's motion is **GRANTED**.

## Background

Plaintiff Devonna L. Johnson ("Johnson") brings this suit against Defendant Castro Law, LLC ("Castro"), alleging six (6) causes of action. *See* doc. 21. All of Johnson's claims arise from her retention of Castro's services for the purpose of settling unsecured debts. *Id.*

In the Retainer Agreement executed by the parties, Castro describes its services as a "Debt Resolution Program," pursuant to which it "will assist you with the resolution of burdensome debt," and recites that Johnson retained Castro "to help resolve specific debts… listed in this agreement." Doc. 23-2, # 164.[1]

---

[1] Castro has attached the retainer agreement to its motion, which the Court may consider because it is "central to the plaintiff's claim," despite Johnson's omission of the same from her pleadings. *Diei v. Boyd*, 116 F.4th 637, 643 (6th Cir. 2024), *reh'g denied,* No. 23-5771, 2024 WL 4440446 (6th Cir. Oct. 4, 2024). Under her claim for Breach of Contract, Johnson

[1]

Under the heading "LEGAL SERVICES CASTRO PROVIDES," the Agreement lists "Debt Analysis," pursuant to which "Castro will review [Johnson's] personal hardship and other debt circumstances and formulate a plan to negotiate improved terms." *Id.* at $ 166. The Agreement next lists "Negotiate and Resolve Client Debt," pursuant to which "Castro will represent [Johnson] in the negotiation and resolution of the unsecured debts listed in… this Agreement." *Id.* And, importantly, the next provision, "Services Outside Scope of Representation," states, *inter alia*, "Castro does not engage in credit repair or credit reporting." *Id.*

For Johnson, the Debt Resolution Program required that she make regular (biweekly) deposits into a "Dedicated Account." *Id.* at # 170. The funds deposited in the account remained in Johnson's control at all times and could be withdrawn by Johnson "at any time without penalty." *Id.* The purpose of the account was to enable Castro to negotiate with Johnson's creditors: "Castro will begin contacting your creditors as soon as we determine that a good faith offer to settle a given debt… may be made, with such factors as the creditor's settlement policies, **the rate of account accretion**, [and] the size of each debt." *Id.* at # 168 (emphasis supplied). The Agreement further notes that "while settlement guidelines differ widely among creditors, an accumulation of 25% of the then-current balance of a debt will normally enable us to make a good-faith offer to settle that debt." *Id.* On the following page, the Agreement recites Johnson's total unsecured debt to be enrolled in the program

---

acknowledges that "the contract for debt settlement services between [the parties] is a valid and enforceable contract." Doc. 21, # 130.

[2]

($10,571.63), the date of the first deposit (3/31/2023), and Castro's estimate of the program length (36 months). *Id.* at # 169.

Though qualifying the payment schedule and 36-month timeline as "good faith estimates," the Agreement nevertheless makes clear that "a variance from this strategy, including [Johnson's] failure to make timely payments, will directly affect Castro's ability to perform as agreed." *Id.* at # 164. The funds in the Designated Account would only be put toward the settlement of a debt account if Johnson agreed to the terms of the settlement, and Castro would not collect a fee "unless and until a debt is successfully resolved." *Id.* at # 169.

Two additional provisions of the Agreement are especially relevant here. First, the Agreement required Johnson to sign her initials acknowledging that her participation in the program "will likely have an adverse effect on [her] credit worthiness and may result in [her] being sued by creditors or debt collectors." *Id.* at # 174. Second, the Agreement contains a no-reliance clause, stating, "This Agreement is the entire agreement between the parties… [N]either Party has relied upon any representations or promises other than those expressly set forth herein." *Id.* at # 175. Nevertheless, much of Johnson's complaint rests on her allegation that an "agent" of Castro's made different representations during a phone call prior to the execution of the Retainer Agreement, including that Castro's services would "expeditiously resolve [her] enrolled debts" and "improve [her] credit score." Doc. 21, # 121.

Johnson claims to have made the biweekly payments for a year, paying "no less than $3,245 into [Castro's] program." *Id.* at # 123. At that point—only one third of

[3]

the full 36-month timeline estimated for the completion of the program—Johnson canceled Castro's services, as she was frustrated that the firm had "failed to resolve *any* of her accounts," and later brought this suit. *Id.* Specifically, Johnson brings the following claims in her First Amended Complaint:

> Count I – Violations of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679a
>
> Count II – Fraud
>
> Count III – Negligent Misrepresentation
>
> Count IV – Legal Malpractice
>
> Count V – Breach of Contract
>
> Count VI – Breach of Fiduciary Duty

*Id.* Castro seeks dismissal of all claims raised by Johnson. In her response to Castro's motion, Johnson stated her withdrawal of Count VI – Breach of Fiduciary duty.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in favor of the plaintiff, accept all well-pleaded factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Consequently, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555).

[4]

## DISCUSSION

### A.   Count I: Violations of the CROA

Castro argues that Count I must be dismissed because Castro is not a "credit repair organization," and thus the statute does not apply, and even if it did, the alleged violations are refuted by the face of the retainer agreement. The Court agrees.

Under the CROA, a credit repair organization is defined as follows:

> **(A)** […] any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of--
> **(i)** improving any consumer's credit record, credit history, or credit rating; or
> **(ii)** providing advice or assistance to any consumer with regard to any activity or service described in clause (i);

15 U.S.C.A. § 1679a (West). Johnson contends that Castro is a credit repair organization because "[d]uring a call with [Castro's] agent, the agent represented to [Johnson] that [Castro] would be able to… improve [Johnson's] credit score." Doc. 21, # 121. Though the retainer agreement signed by the parties expressly states that Castro is *not* a credit repair organization, Johnson argues that such a disclaimer is no impediment to her claim because "courts have found such disclaimers to be insufficient as a matter of law when the plaintiff alleges that the defendants have otherwise expressly or impliedly represented that their services will improve the consumer's credit." Doc. 24, # 202-203.

Castro cites to the clear language of the retainer agreement, which, in addition to stating that the firm "does not engage in credit repair or credit reporting," states

[5]

that "participation in the program will likely have **an adverse effect on your credit worthiness**." Doc. 23-2, # 166; *id.* at # 174 (emphasis supplied). Importantly, the agreement also provides that "All prior negotiations and discussions are superseded by the Agreement." *Id.* at # 175.

Thus, Johnson relies entirely on her allegation that the unnamed "agent" of the firm "represented" that Castro would provide services that it expressly disclaims in the text of the agreement. Doc. 21, # 121. Even while accepting her allegation as true, as the Court must, Johnson's argument is undermined by the plain language of the retainer agreement which expressly supersedes any "prior negotiations and discussions." Doc. 23-2, # 175. Johnson agreed to those terms when she executed the agreement.

Johnson cites case law to support her argument that the retainer agreement disclaimers can be overcome by the alleged phone call representation. But the cases Johnsons cites are not from this circuit, and regardless, are easily distinguishable. For example, *Stout v. FreeScore, LLC*, a case from the Ninth Circuit, concerned a putative class action against an online business which, despite fine print stating that it was "not [a] credit repair service [provider]," had many advertisements which suggested otherwise. For example, one advertisement characterized the "express purpose" of the defendant's business services as "so that steps may be taken to improve credit." 743 F.3d 680, 683 (9th Cir. 2014); *id.* at 686. Similarly, in *Zimmerman v. Puccio*, the plaintiff pointed to "advertisements, informational materials, and employee scripts," which repeatedly represented that the defendant's

[6]

services would "restore your credit rating" and "improve your credit." 613 F.3d 60, 72 (1st Cir. 2010). No such language appears here. And, in contrast to the plaintiff in *Stout*, who engaged with the defendant through online registration, Johnson engaged with Castro via a detailed retainer agreement, which she signed and initialed throughout, including immediately after the clause which explicitly disclosed the program's "likely… adverse effect on credit worthiness." Doc. 23-2, # 166; *compare Zimmerman*, 613 F.3d, at 72 (disclaimer stating "the client's credit rating is outside of the scope of this agreement" did not allow defendants to escape liability in light of contradictory promotional materials).

In sum, the Court agrees that Castro is not a credit repair organization, for the purposes of the CROA. Therefore, Johnson's claim for CROA violations must be dismissed.

### B. Count II: Fraud and Count III: Negligent Misrepresentation

Castro argues that Counts II and III of Johnson's complaint, alleging fraud and negligent misrepresentation, respectively, fail to state a claim for which relief can be granted. The Court agrees.

By rule, certain claims—including fraud and negligent misrepresentation—must be pleaded "with particularity" as to "the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This standard requires that a complaint state the "who, what, when, where, and how" of such a claim. *Patterson v. UnitedHealthcare Ins. Co.*, 762 F. Supp. 3d 643, 655 (N.D. Ohio), *aff'd sub nom. Patterson v. UnitedHealth Grp., Inc.*, 161 F.4th 415 (6th Cir. 2025) (quoting *Greer v. Strange Honey Farm, LLC*, 114

F.4th 605, 614 (6th Cir. 2024)). Specifically, the pleading must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, (4) explain why the statements were fraudulent, and (5) describe the fraudulent scheme and the resulting injury." *Id.* at 656 (cleaned up).

Here, Johnson again relies on the alleged phone call with an "agent" who "represented" that Castro would be able to "(1) resolve [Johnson's] financial obligations for a significant discount by negotiating with [her] creditors; and (2) improve [her] credit score." Doc. 21, # 121. She further alleges that Castro represented "that all she would need to do is make bi-monthly payments over a certain period of time and that [Castro] would utilize the payments to expeditiously resolve [her] enrolled debts." *Id.* at # 122.

Castro argues that these allegations do not meet the heightened pleading standard of Rule 9(b), and the Court agrees. Notably, Johnson describes what was "represented," but she does not provide the actual statement. *Compare Patterson*, 762 F. Supp. 3d at 656 (N.D. Ohio) (finding heightened standard satisfied where the "complaint [provides five examples] of specific statements... reproducing their contents verbatim."). Johnson does not identify the speaker beyond describing them as an "agent" of Castro, which falls short of what is required. Doc. 21, # 121; *see New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 411 (6th Cir. 2022) (failing to identify the person who made the allegedly fraudulent misrepresentation "is enough to make the pleading defective."). She does not specify "where and when

[8]

the statements were made" (*Patterson*, 762 F. Supp. 3d at 656), referring only to the statement being made "during a call," and suggesting that the call occurred sometime between January and March of 2023. Doc. 21, # 121-22. Again, Rule 9(b) requires more particularity. *See Greer,* 114 F.4th at 616 ("Plaintiffs' failure to give even one date on which an alleged misrepresentation occurred dooms their ability to allege fraud with particularity") (internal quotation marks omitted). In sum, Johnson's fraud and negligent misrepresentation claims fall well short of the heightened pleading standard under Rule 9(b), warranting dismissal.

In considering a motion for dismissal under 12(b)(6), the Court must consider whether any proposed amendments to the pleadings would save any claims which would otherwise be dismissed. Though the deficiencies identified above could potentially be cured by amendment, Johnson has proposed nothing of the sort. Rather, Johnson notes that courts in this circuit "have relaxed the particularity requirement… in situations where the facts are known only by the defendant." Doc. 24, # 203. This is not one of those situations. Johnson was a participant in the alleged call. Her allegations do not suggest any category of facts which would be known only by the defendant, let alone any which would overcome the preclusive effect of the no-reliance clause.

Indeed, even if the Court found Johnson's claims satisfied the heightened pleading standard, she has not articulated any reason for the Court to disregard the express terms of the no-reliance clause. As Castro notes, both fraud and negligent misrepresentation claims require a showing of justifiable reliance, which would be

[9]

directly contrary to the terms agreed to (i.e., Johnson's own representation that she has not relied upon any representations beyond those set forth in the Agreement). Given the "no-reliance" clause in the Retainer Agreement executed by Johnson, she has not pleaded fraud or negligent misrepresentation claims for which relief can be granted.

### C. Count IV: Legal Malpractice

Castro argues that Johnson has failed to state a claim for legal malpractice. The Court agrees.

"To establish a cause of action for legal malpractice based on negligence, the following elements must be proved: (1) an attorney-client relationship, (2) professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause, (5) and damages." *Shoemaker v. Gindlesberger*, 2008-Ohio-2012, ¶ 8, 118 Ohio St. 3d 226, 228, 887 N.E.2d 1167, 1169–70. Castro's argument takes aim at the second and third elements, contending that Johnson has not plausibly alleged the breach of a professional duty which must anchor a claim of this kind.

In her amended complaint, Johnson alleges that Castro "owed a professional duty… specifically to negotiate with [Johnson's] creditors and provide other legal services." Doc. 21, # 129. She further alleges that Castro breached that duty by "(1) failing to promptly communicate with [Johnson's] enrolled creditors, (2) failing to resolve *any* of [Johnson's] enrolled debts, and (3) failing to improve [Johnson's] credit score." *Id.*

As noted above, Castro's Debt Settlement Program required Johnson to make regular (biweekly) deposits into a "Dedicated Account." Doc. 23-2, # 170. The funds deposited in the account remained in Johnson's control at all times and could be withdrawn by Johnson "at any time without penalty." *Id.* The purpose of the account was to enable Castro to negotiate with Johnson's creditors: "Castro will begin contacting your creditors as soon as we determine that a good faith offer to settle a given debt… may be made, with such factors as the creditor's settlement policies, **the rate of account accretion**, [and] the size of each debt." *Id.* at # 168 (emphasis supplied). The agreement further notes that "while settlement guidelines differ widely among creditors, an accumulation of 25% of the then-current balance of a debt will normally enable us to make a good-faith offer to settle that debt." *Id.* On the following page, the agreement recites Johnson's total unsecured debt to be enrolled in the program ($10,571.63), the date of the first deposit (3/31/2023), and Castro's estimate of the program length (36 months). *Id.* at # 169.

Johnson alleges that she regularly made bi-weekly payments of $129.80 over the course of a year, totaling "no less than $3,245 [deposited] into [Castro's] program." Doc. 21, # 123. Johnson alleges that Castro "failed to resolve *any* of her accounts" despite her having deposited more than the balance on any one of her debts.[2] *Id.*

---

[2] Page 33 of the retainer agreement lists Johnson's debt accounts to be enrolled in the program, showing a total of 10 such accounts, with balances ranging from $532.63 to $1,895. *See* doc. 23-2, # 195. Because the program aims to negotiate debt settlements at a discount (i.e., for less than the full amount owed), the fact that all of Johnson's accounts remained unsettled while the Dedicated Account held funds in excess of any one debt account balance is not inconsistent with the expectations of the program as set forth in the retainer agreement.

Though her frustrations are understandable, the retainer agreement makes clear that the estimated timeline to complete the program was 36 months. Doc. 23-2, # 169. Thus, when Johnson alleges that Castro failed to "promptly" communicate with creditors, she again appears to rely on statements allegedly made by an "agent" of Castro's during a call before she executed the retainer agreement.[3] And, again, the retainer agreement is explicit in its terms which are plainly contrary to what Johnson alleges she was told on the phone. More importantly, the retainer agreement contains a clear "no-reliance" clause, pursuant to which Johnson agreed that she has not "relied upon any representations or promises other than those expressly set forth" in the retainer agreement. *Id.* at # 175. In sum, the retainer agreement does not impose the duties which Johnson alleges were breached by Castro, and the no-reliance clause therein forecloses Johnson's attempt to trace the duty to the alleged phone call with an agent of Castro. Therefore, this claim must be dismissed as well.

### D. Count V: Breach of Contract

For much of the same reasons already discussed, Johnson's breach of contract claim fails as a matter of law.

Under Count V of her amended complaint, Johnson states that "the contract for debt settlement services between [Johnson] and [Castro] is a valid and enforceable contract." Doc. 21, # 130. And she alleges that Castro breached that contract by:

> (1) failing to pay [Johnson's] creditors with the funds that [she] paid into the debt settlement program; (2) failing to resolve any of [Johnson's] debts despite having… sufficient

---

[3] As noted, Johnson does not provide the actual statement(s) allegedly made to her by Castro's agent but describes the agent "represent[ing]" to her that the debts would be resolved "expeditiously." Doc. 21, # 121.

[12]

funds to settle [her] debts; (3) failing to promptly communicate with [Johnson's] creditors in an effort to resolve [her] debts; and (4) putting its financial interests above [Johnson's].

*Id.* But, again, the language of the retainer agreement does not impose the obligations that Johnson alleges were breached.

As discussed above, before exiting the program after only 1 year, Johnson signed a retainer agreement which contemplated a 3-year timeline to resolve her debts. Doc. 23-2, # 169. The retainer agreement further stated that, during that time, Castro would contact creditors "as soon as [Castro] determine[s] that a good faith offer to settle a debt… may be made." *Id.* at # 168. Nothing in the retainer agreement obligated Castro to resolve Johnson's debts as soon as sufficient funds were deposited in the Designated Account.[4] Nothing in the retainer agreement obligated Castro to provide its services in a third of the estimated time. Nothing in the retainer agreement required Castro to act "promptly." And the allegation that Castro put its "financial interests above [Johnson's]" is vague, conclusory, and unsupported by the facts. *See* doc. 23-2, # 169 ("We do not charge any fee for our debt negotiation services unless and until a debt is successfully resolved.").

---

[4] Importantly, the funds in the Designated Account remained in Johnson's control at all times, and nothing prohibited her from withdrawing those funds to pay off the balance of any given debt account. The point of Castro's program, however, was to negotiate and settle Johnson's debts for less than the full amount owed on a given account, and Castro could only settle a debt with Johnson's approval. *See* doc. 23-2, # 169. So, to the extent Johnson's allegations imply that Castro failed to "resolve" her debts by paying them off in full when she accumulated enough funds to do so, this does not describe a breach. On the contrary, had Castro done so, Johnson likely would have had a stronger claim for breach of contract.

Again, Johnson does not cite to language in the retainer agreement supporting her claims. Instead, she can only refer to the alleged phone call in which Castro's agent represented that the debts would be resolved "expeditiously." Doc. 21, # 122. But, for the reasons discussed above—namely, the no-reliance clause in the engagement agreement—any such representation was not a part of the contract between Johnson and Castro. In sum, Johnson has not alleged any conduct by Castro which would be in breach of any of the terms of the engagement agreement, and the Court could only find the additional duties alleged by disregarding the clear terms of what she concedes to be a "valid and enforceable contract." *Id.* at # 130. The Court declines to do so.

## CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff Devonna Johnson's amended complaint fails to state a claim for which relief can be granted. Therefore, the Court **GRANTS** the motion of Defendant Castro to dismiss the amended complaint in its entirety.

**IT IS SO ORDERED**.

s/ James L. Graham  
JAMES L. GRAHAM  
United States District Judge

DATE: January 13, 2026

[14]